CASE 88.—ACTION ON A FIRE POLICY BY W. S. HARGROVE AGAINST THE CONTINENTAL INSURANCE CO. OF NEW YORK.—February 9.

# Continental Ins. Co. of N. Y. v. Hargrove

Appeal from Graves Circuit Court.

R. J. Bugg, Circuit Judge.

1. Insurance—Premiums—Payment—Estoppel.—Though tender of payment by check is not ordinarily good, yet, if the course of dealing between the insurer and insured has been to receive payment by check, the insurer would be estopped to say that a payment by check was not a sufficient compliance with the policy.

2. Appeal and Error—Harmless Error—Technical Errors.—

Though the allegation of a fact properly ought to have been in the reply rather than as an amendment to the petition, it is immaterial so long as an issue was made as to the fact and the parties allowed to present the evidence bearing thereon at the trial.

3. Insurance—Fire    Policy—Actions—Evidence—Admissibility.— In an action on a fire policy exempting the insurer from liability for loss occurring while a premium note was in default, evidence as to custom as to receiving payments of other policies after due. should not have been admitted where the contention of insured was that the policy had not lapsed at the time of the fire, but had been reinstated by payment of the premium after the due date, but before the fire.

4. Same—Sufficiency.—Evidence in an action on a fire policy exempting the insurer from liability for loss occurring while a premium note was in default held to show that a check in payment of a premium note was not received by the insurer until after the fire.

5. Same—Premiums—Payment—Mailing Check.—Under a fire policy exempting the insurer from liability for loss occurring while a premium note was in default, and designating the offices of payment, mailing a check is not payment of a premium note, until received, which must be before the occurrence of the fire.

6. Evidence—Presumptions—Mailing Letter.—The mailing of a letter duly stamped and properly addressed does not raise a presumption of either law or fact that it was received by the addressee, but it is a relevant circumstance from which, if not rebutted, the inference is fairly deducible that the letter was received in due course.


R. N. STANFIELD for appellant.

1. It is not alleged in the amended petition that the plaintiff waived any specific provision of the policy involved in this suit.

2. It is not alleged that the provisions of the old policy or policies were the same or even similar to the provisions of the policy involved in this suit.

3. It is not alleged that the policy in question covered the same property insured by any former policy.

4. The allegations contained in the amended petition when taken as true, do not constitute a waiver of the provision in this policy requiring the prompt payment of the installments when due.

5. The allegations contained in the amended petition are incon- sistent with those of the original petition. In the former, the

Continental Ins. Co. of N. Y. v. Hargrove.

appellee pleads prompt payment in accordance with his alleged contract, while in the latter he seeks to excuse prompt payment.

## AUTHORITIES CITED.

Springfield. Fire and Marine Ins. Co. v. Jenkins, 9 Ky. Law Rep. 932; Potter v. Continental Insurance Co., 107 Ky. 326; Home Insurance Co. v. Ward, 72 S. W. 15; Johnson v. Continental Ins. Co., 107 S. W. 688; Franklin Life Ins. Co. v. McAfee, 28 Ky. Law Rep. 676.

W. J. WEBB for appellee.

1. The policy in this case was only suspended while any installment of the note was due and unpaid, and the payment of the installment at any time before the loss revived the policy. (Potter v. Continental Insurance Company, 107 Ky. 326.)

2. Accepting previous payments after due by check, is a waiver of the provisions in the policy, as also a demand for payment after it is due. (Moreland v. Union Central Life Insurance Co., 20 Ky. Law Rep. 432; Moore v. Continental Insurance Company, 21 Ky. Law Rep. 977; Home Insurance Company of New York v. Ballew, &c., 29 Ky. Law Rep. 1059; Walls v. Home Insurance Company, 24 Ky. Law Rep. 1292; Continental Insurance Company of New York v. Browning, 114 Ky. 183.)

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellee was insured against loss of his stock barn and contents by fire for a term of five years by a contract policy of insurance issued by appellant company. The premium was to be paid in annual installments, and was evidenced by a note, due one-fourth September 1, 1907, for $7, and so on. The policy contained this provision: "It is expressly agreed that this company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or part thereof, given for the premiums, remains past due and unpaid. Payments of notes must be to The

Continental Insurance Co., at its office in Chicago,
Ill., or its office in New York, or to an authorized
person having such note in possession for collection."
On August 15, 1907, the company mailed a notice to
the insured, calling his attention to the fact that his
installment note for premium on his insurance would
become due on September 1st and requested payment.
The insured claims that on September 4, 1907, he
mailed to the company a letter, addressed to its
Chicago, Ill., office, containing his check on a bank at
Mayfield, Ky., for $7. On September 12, 1907, the
barn and contents were destroyed by fire. The com-
pany was not notified of the fact till the 16th of Sep-
tember. On September 15th the company wrote a
letter to the insured, telling him that his premium
note for $7 due September 1st had not been paid.
This letter appellee received on the 19th, and then
answered that he had sent a check on September 4th
in payment. On September 20th the company re-
ceived a letter from appellee containing his check for
$7 on the Mayfield bank. The office boy who opened
the letters, seeing it contained a premium payment,
indorsed upon it the date of receipt, and passed it
to the cashier, who likewise indorsed it with his office
stamp. showing date of receipt. He was ignorant
that the insured property had been destroyed, and
deposited the check that same day in bank for col-
lection. Later in the day, but after banking hours,
it was learned by other officers that such a check had
been received, and they, having notice of the destruc-
tion of the property, undertook to recall the check,
but it had been sent forward by the bank for collec-
tion. Thereupon the company sent the following day
to the insured by registered mail $7 in currency, ex-
plaining the error in its use of the check. That

money and letter were received by appellee on September 23d, and on October 30th he returned the money to the company without explanation. They notified him promptly that they held it for his account and subject to his direction. Appellee sued upon the policy, alleging a mistake in the written contract in the statement as to when the annual installments of premiums were due. He claimed that it had been agreed between him and the company that it was to be the 9th of September, and that by mistake they had written it in the contract as the 1st of September. He also alleged that he mailed the company his check on the 4th of September in payment of the premium, and that it received it before the 9th of September, and collected and retained it. An issue was made in the pleadings as to the alleged mistake in the execution of the written contract, as well as to the receipt, collection, and retention of the check as charged. Appellee then filed an amended petition, which was allowed over appellant's objections, in which he averred "that the policy in question was in renewal of one he had been carrying in the defendant company, and that, in payment of his installments, he had previously made payments on said installments after the date that said installments were due, and same was and had been accepted by said company; further, that the failure to pay any installment when due did not forfeit the policy, but by its terms he had the right to renew the same at any time by paying said past installment; that said payments were at all times made by check and by sending the same through the mails, which was accepted by the defendant; that they thereby waived the provision thereof, and he relied upon said waiver." The allegations of the amended petition

were traversed, and in time the case went to trial before a jury, who returned a verdict in favor of appellee for $500. The appellant relies upon two grounds for a reversal of the judgment which was rendered upon that verdict. One is that the court erred to its prejudice in permitting the amended petition to be filed; the other is that the verdict is flagrantly against the evidence.

If the allegations of the amended petition were material facts to be pleaded, the discretion of the trial court in allowing it to be filed after the main issue had been joined, always large in such matters of practice, does not seem to have been abused. The policy contract contained a provision requiring the payment of the premiums to be made promptly, and to the Chicago or New York office of the company. Tendering payment by check is not ordinarily good tender. But, if the course of dealing between the parties with respect to the business in hand had been to receive payment in the customer's bank check, that fact would estop the company from saying in this instance that that was not a sufficient compliance with the requirement of the contract if the customer had a deposit with the bank against which the check was drawn sufficient, and maintained sufficient, to pay it on presentation. Potter v. Insurance Co., 107 Ky. 326, 53 S. W. 669, 21 Ky. Law Rep. 1014. There is no question made in this case that the bank was not supplied with the customer's funds in an amount sufficient to meet the check. But the matter of payment by bank check, instead of bank draft or currency, is the only material fact alleged in the amendment. Properly it ought to have come in the reply. But it does not matter materially on appeal so long as an issue was made as to

the fact and the parties allowed to present the evidence bearing on it at the trial. As to the course of dealing between the parties in treating the other stipulations of their policies it is not material here. This is not a case where an offer had been made to reinstate a lapsed policy. The contention of appellee is that the policy had not lapsed at the time of the fire, but was reinstated by his payment of the premium after September 1st and before the fire. The policy itself allowed that course. Nor is it material whether the date of payment was to be on September 1st or September 9th, as in either event it had to be paid, or tendered to the office in Chicago, before the fire on the 12th of September, in order for the policy to be in force. The averments and the evidence as to how the company had dealt with appellee as to other policies in receiving payments of premiums after they were due were immaterial, and should not have been allowed. What view the jury may have taken of that character of evidence it is difficult to determine. Nothing in the instructions authorized them to consider that such occurrences waived the stipulation for payment in any event before the loss. The instructions expressly stated the contrary to be the legal status of the parties under their contract.

But we think the evidence is overpowering that the check was not received at Chicago till after the fire. On this point the evidence for appellee is substantially this: Appellee testified that he drew the check on the 4th of September, and that day placed it in an envelope addressed to appellant's Chicago office, and himself took the letter to be mailed; that the postmaster had just closed the mail pouch preparatory to taking it to the train; that he requested

the postmaster to open the pouch and include his letter, explaining why it was important to mail it that day. The testimony of the postmaster, while not identifying the day clearly, does corroborate appellee's statement as to the fact that he came with a letter addressed as stated after the mail had been closed, and requested him to open the pouch and include it, and that he did so. It may be taken as established that the letter containing the check was mailed on September 4th. If it had been received by the company before the 12th, in view of its custom in dealing with appellee of receiving his checks in payment, that would have been a good payment of the premium. But mailing a check is not payment of an obligation, where the stipulation is that payment shall be at the place where the letter containing the check is addressed to. The check must be received to constitute payment in any event. And it must have been received before the occurrence of the fire, as otherwise there would not have been a contract in existence upon which it was due to be paid, for, if the fire had occurred before the check arrived, the contract was no longer executory, for, as the subject-matter had been destroyed, it was no longer possible for the insurer to indemnify against its future loss, and there was nothing to support the undertaking in the policy to do so.

The mailing of a letter, duly stamped and properly addressed, to the known place of business of another, does not raise a presumption of either law or fact that it was received by the addressee. Sullivan v. Kuykendall, 82 Ky. 483, 6 Ky. L. R. 681, 56 Am. Rep. 901. It is, however, a relevant circumstance from which, if not sufficiently rebutted, the inference is fairly deducible, and from which the jury or other trier of the fact

may find, that the letter was received by the addressee in due course. Greenleaf, Ev. 40, note; Sullivan v. Kuykendall, supra; Railway Officials' & Employes' Ass'n v. Bedlow, 112 Ky. 184, 65 S. W. 362, 23 Ky. Law Rep. 1438; Springfield F. & M. Ins. Co. v. Jenkins, 9 Ky. Law Rep. 932. But the circumstance is only a circumstance, and, like all such evidence, is rebuttable. Appellant's evidence is as follows: The office boy whose duty it was to open the mail received from Kentucky testified that he was on duty on the 20th of September, and received and opened many letters for the company on that day; that he was provided with a rubber stencil with which he stamped each letter opened by him showing the date of its receipt, and then he carried all letters so received and stamped to the various departments to which they belonged, as indicated by their contents; and that letters containing remittances of premiums went to the cashier. The latter official corroborated the boy as to the latter's duties and custom, and that he also had a stencil with which he stamped all letters received by him from the office boy containing the remittances, and entered in his cash book concurrently remittances so received, and deposited them the same day in bank for the company. Appellee's letter containing the check was produced showing stamped indorsements of the office boy and the cashier that it was received on the 20th of September. The cashier's book of original entry kept in the regular course of the business show he that day credited appellee with the $7 check and deposited it for collection that day; the check was produced, and it showed the Chicago bank's indorsement that day to its Louisville correspondent, and the latter's indorsement dated the following day forwarding it to the

Mayfield bank, and the last-named bank's indorsement on September 23d, showing it was paid on that day. Appellant's cashier and other, clerks testified to the fact that, after the check had been deposited on the 20th they discovered that the company had had notice on the 16th that the barn had been destroyed by fire on the 12th, and that immediately they took steps detailed above to stop the check, failing in which they returned the money to appellee as stated. They also testified that on the 15th they sent appellee a second notice, aprising him that his premium was past due, and that in the meantime the policy was suspended. (Appellee admits the receipt of that letter on or about the 19th.) They further testified that they did not learn until the 16th that the barn had been burned, and there is no evidence to the contrary.

From all this evidence we cannot reasonably doubt that appellee mailed the check on the 4th as he claims; nor can we doubt that it failed to reach the Chicago office of appellant till the 20th. There is one point which could have been made plain had appellant preserved the envelope containing the check. That would have showed conclusively to the average mind when the letter was mailed at appellee's post office, and what is equally as important, when it was received at the Chicago post office. Of course, it might have been delayed in the latter office as well as elsewhere, but it would have been evidence of a material quality in the case. However, the office boy testified that it was his custom to throw all envelopes in the waste basket, and that after office hours the janitor destroyed them. The failure to preserve the envelop and the reason advanced by appellant's witness explaining the failure were both material facts in the case, and were for the jury. But we cannot see that

this omission alone is enough to contradict all the other evidence that the letter was not actually received till the 20th of September; for admitting it was received at the Chicago post office before the 20th is not proof that it was by that office delivered to the addressee before the 20th. There is no greater inference that the employes of the Chicago post office promptly did their duty than that any other post-office employe through whose hands the letter passed did his.

The evidence is so persuasive to our minds that the letter and checks were not received till the 20th that we must say that at first blush the verdict seems to be a flat contradiction of the great preponderance of the evidence. Not only the numerical weight—which is not so important—but the mute evidence indorsed on the check itself in due and usual course of affairs by persons who could have had no interest in fabricating evidence in the case.

Wherefore it is ordered that the judgment be reversed and cause remanded for a new trial.